This case will be on 06-1612, Toshiba Incorporated v. Juniper Networks Incorporated. This case will be on 06-1612, Toshiba Incorporated v. Juniper Networks Incorporated. May it please the Court, this case is on appeal from the judgment of non-infringement based on the claim construction order on 12 claim terms of 4 patents and 2 different patent fields. Let me ask you about that just as a threshold matter. The only thing I could see in the record before rust was there was an invalidity claim of indefinite, which the judge dismissed or granted partial sum of judgment on. Are there any other invalidity counterclaims hanging out there? No, there are not. So the only invalidity, the only invalidity issue raised was the indefinite as well. Invalidity claims, no, the patents are, there are underlying invalidity arguments, yes, based on prior work, but not on indefinite. There were other, were they counterclaims or affirmative claims as well? Affirmative claims. So there are no other pending, I mean this goes to the issue of whether or not we have a final judgment here. There are no other claims on any other subject. So any validity issues were raised by way of a defense? By affirmative defense. The 710 patent family includes 3 of the 4 patents and the 4th patent is the 127 patent. The district court erred in construing the claim in terms of the 710 patent family by reading limitations in the claims that restrict the claims to only ATM technology. The claims were carefully drafted not to include any such limitations. But the ATM issue is really involving 3 claims. It's really involving 9 claims. But not all of them. But not all of them. I submit that the ATM issue is the major issue with respect to the entire 710 patent family, which includes 3 patents and 9, 12 claims. And the district court erred in construing those claims by reading an ATM limitation into the claims, both explicitly and implicitly. Is that including the layer? The main construction of the layer? Yes. And how does the ATM instead of the claims come under the burden of the construction of the 710? What the impact of the district court's construction was, was to define the claim term in such a way as to restrict the invention to covering only an ATM specific invention. And with respect to layer, it's really pushing the invention not to the low layer 3, which is what the invention is all about. I'll touch on that more in a moment. But it is pushing it to layer 2, which is an ATM network. And Tashiev's invention really is in between layers 2 and 3. So it gave rise to a non-incringement argument that if you're between 2 and 3, the fact that the district court's construction parks you right at 2, then you avoid infringement. Well, let me ask you just in connection with that, but not on that point exactly. The other side makes at least a second argument that if we are able to affirm one limitation per claim, we can still affirm. In other words, if we were to disagree with the district court judgment on certain of the claim constructions, we could still affirm this judgment. It seems to me in the great review that we take issue with that. We do take issue with that because it's very complicated. There are 22 claims. There are 12 claim terms. There are 7, I believe, independent claims. And depending on which claim term you reverse, it may be harmful or it may be dispositive. Well, which claim construction do you say supports the judgment on infringement? We don't need to know that. What the district court has done is adopted, in whole, June 1st property claim construction. It is riddled with non-infringement arguments. Now, whether any one particular claim term is dispositive is difficult to say because there are so many claims and so many claim terms. So I would submit that you can characterize the district court's error by reading in an ATM limitation, both either explicitly or implicitly, in all of the claim terms of the 710 patent family. And with respect to the 127 patent, the district court read in an upstream directionality limitation into the independent claims. If we do not get reversal of the ATM issue with respect to the 710 patent family and the upstream directionality limitation with respect to the 127 patent, we lose. So to frame it in terms of what's dispositive, there's a dispositive issue with respect to the 710 patent. There's a dispositive issue with respect to the 127 patent. But I don't think that it's a simple analysis to simply identify if I take this one claim term from this claim and affirm that, then Toshiba loses. It's more complicated than you would think. I don't require all this focus. There were two. There were two issues. But the issues manifest themselves differently throughout the claim construction. For example, where the district court explicitly read in an ATM, the district court defined virtual connection to be a logical connection between two nodes of an ATM network. Right. I can see virtual connection, virtual path, and plurality of networks. Yeah. That's where it explicitly came in. Yeah. Leaving that aside, let's assume we agree with that. I'm not sure necessarily that that leads us to saying that the ATM, that analysis, even if we reject that analysis, infects necessarily what you said, it infects the upstream analysis? No, the upstream is separate. The 127. Okay. That's right. So staying within the 710 family, the 710 patent, the 322 patent, the LAO patent, we look now at the— So the ATM, for those, is the ATM with the patient? Explicitly. Explicitly. Okay. The 127 is the upstream. Explicitly, yes. But if we don't agree with you that the layer—let's assume that we were to agree with the district court judge on the construction of the layer and disagree with you that it's necessarily infected by the ATM analysis, then on that basis, we could affirm non-infringement on the 710. If you affirm the ATM explicitly? No, you affirm for construction of the layer. That is not true. Because—and this is where it gets complicated because this term exists in different patents. With respect to one patent, the construction of the layer is dispositive. Which patent is dispositive? Arguably dispositive. The 322 patent. The 322 patent because it gave rise at least to a non-infringement argument that storing at a layer lower than layer 3 means storing at layer 2. And we submit that that is not what this invention is about. But when you go to that claim term into the 710 patent, it says transferring a packet without performing a network layer level analysis. Layer is in there, but it's saying I'm not doing layer 3. That's what this invention is all about. Don't do layer 3. They've gone with the 322 patent and said if you're storing below layer 3, we don't do layer 3. What's parking at 2? Well, they don't do 2. They do 2 1⁄2. And that's what Toshiba's invention is all about, is to find the shortcut that gets you out of 3 but not at 2. So we're at 2 1⁄2. So the construction has given rise to a non-infringement argument that we think is unwarranted and that the construction is unnecessarily limited in that regard. So that's an example of why it is not a cut-and-dry analysis as to a firm loan claim term that your job is done. Okay. Well, leaving that aside, then, what about at least on the 127 patent? If we would agree with the district court's claim construction on policy information, then we can confirm it. We can confirm it. So if that's the case, what you're arguing is there's still left with the 710 and the 322? 710 and 322 are available. Assuming you're already on 322. Yes, the 710 is available. I'd like to go back just for a second on the 127 patent with the upstream. Again, it's the same. The nature of the error is the same. The claim limitation is storing information in a memo about a note. It's not about an upstream note. It's not about a downstream note. It's about a note. And the claim term, the claim language is drafted to not include that limitation. And it's the burden of Juniper for the district court to find a reason to depart from that claim language and to pull a limitation in. And there is no reason to do so. The claim language is plain and basic. I'd like to go back now to the implicit ATM limitations. And there are three claim terms from the 710 patent family where we are making reference to connections. And the district court has read in an existing limitation. And what that has done is to say that these inventions to refer to something in the network that must be pre-existing. In other words, you have to have this existing ATM connection in order to refer to it. And that's simply not in the claim language. These definitions were adopted by the district court. They adopted Juniper's arguments. And Juniper's arguments are based on dictionary definitions, which are self-serving to get the term to exist in the claim language. The claim language should control in all those respects. Just to summarize again with the... Why don't you say that that's revoked? Will you say that the American Claims Summary is inverted? As long as you want to use revoke, it's all right. The district court's claim construction is contrary to the precedent set forth in Phillips. Because under Phillips, there are only three bases, only three bases upon which a district court could have relied in departing from the claim language as drafted and reading these limitations into the claims. If the claim term itself were understood by one skilled in the art to be limited to ATM, then it would have been justified. But the record below is clear that these claim terms are not ATM-specific. The specification is clear that this invention is not directly ATM. And by specification, you're referring to the summary which says that there is an ATM. I'm speaking throughout the specification. The field of the invention says that it's suitable for an Internet environment. Internet environment is a network of networks. There are disparate network claims out there. This invention applies to interconnecting disparate network claims. The background of the invention explains that there's a bottleneck zone between different types of networks. There's a bottleneck in the Layer 3 processing. We avoid that. The specifications give examples of X25 frame radar as other examples of connection-oriented networks that Toshiba's inventions can be used with. And these technologies were not drafted into the claims. So the claim language has to control it. There's no disclaimer in the specification to say that this is an ATM invention. This is not a single embodiment case where the invention is ATM. Toshiba came from an ATM background. They built ATM devices. They described this invention in terms of interconnecting ATM networks. But this invention is not in the specification throughout. And it's clear that other networking technologies apply. Are we ready? I wanted to start by just asking you, do you agree with the statement made with respect to the competent counterparts? There are no competent counterparts. And the issue of finality from our perspective really revolves around the nature of the stipulated judgment here. And the Third Circuit's law with respect to what is necessary in order for a consent judgment to be defined. Can we leave that subject? I know that's the lead argument. But frankly, that gives me some pause. Because your second argument is if you affirm one limitation per claim, you're OK to affirm. Let's move on. And if one were to agree with that, hypothetically, shouldn't that give one pause that you're not leaving with that argument? That your main argument is no, don't affirm. You've got the demand here. Well, I guess my reaction to that is it's an issue of jurisdiction. And I don't know how we have a choice not to raise it. And this court's been very strict with parties in terms of identifying where jurisdictional problems may or may not exist. But why does the stipulation give us a problem if we assume that we could affirm any one of the limitations, and therefore affirm the judgment, not reach the other? So it's not covered by the stipulation, which says if you demand it, you've got to go on. Why is there a problem with the jurisdiction? That's certainly an improvement over the situation that we briefed, because that was not the situation that was briefed here. I mean, that's an argument we made, but that was not a concession that Toshiba was willing to make. They were unwilling to identify any claims on which they could lose them below. So we have a situation where it was either affirm all, or if you make any change to any claim, you have to send this case back. Well, they kind of conceded that this morning, at least a bit of that, right? I hear some concessions being made. That's correct. But I think that's a situation that wasn't known to us until three seconds ago when that argument was made. I would also add that if you read the Third Circuit's cases, Brazilian malign, they appear to take a very rigid line on stipulated judgments. It must end the litigation no matter what. And even under the scenario we're now talking about, there still is an option for sending the case back and allowing for further litigation. But I certainly— But another— That's right. I think as I read— Well, I read these Third Circuit cases as carving out a special exception for consent judgments that may not necessarily be present, for example, a final judgment from a summary judgment of non-infringement. But I certainly agree that the situation is a lot different when you have at least the Court of Appeals with the option of saying, well, OK, maybe there was error here, but there wasn't error on this particular claim. We can affirm on that basis. I think that's been one of our biggest concerns in looking at this judgment as it's come up, is that it effectively, at least as it was briefed, it effectively strips the Court of Appeals from its ability to say, well, OK, let's say there was a mistake on ATM, which we don't agree with, but let's say there was. We can affirm on all these other grounds. There are four or five claim terms in the 710 Act in addition to ATM. Well, that's true. So let me get to that, which is that the other side's response to that is the claim construction of a layer, which is arguably an alternative basis, you might say, to affirming even if we reject the three ATM terms, right? That's correct. So what's your answer to their argument that they made this morning that the construction of a layer was infected by the ATM Act? Well, I mean, it's interesting because our construction of a layer is one of the layers in the open systems interface protocol stack, which, of course, is an open system protocol stack. It is open to all kinds of network technology. And the argument I heard from counsel was, well, it really needs Layer 2. Well, Layer 2 is not limited to ATM. There are other networking technologies that operate Layer 2 of the OSI protocol set. So I don't understand the argument that that definition is somehow restricted to ATM. It is, in my opinion, just a prototype of a definition having nothing to do with ATM. What they really take issue with is the way the claims of the 322 Pact were written. They wrote them to say Layer lower than Layer 3, which is different than the way the claims of the 710 Pact, for example, were written. Well, that's not the way they're worded. So what they really want is they want to redo the wording of the claims of the 322 Pact. I don't think it's an issue in the definition of the term layer. It's the way the claims were written. And so to me, I don't think that's a very sound argument to suggest somehow by saying a layer in the OSI protocol set even affected that of ATM. And I think one other thing that's problematic here is that at least I don't – I'm hoping we have concessions that this court can affirm on these terms other than the three terms where there was an ATM interpretation made. But I'm not sure we have that complete concession. So why do we need that concession? Why does this court need that concession to apply the notion that if we can affirm one limitation per claim, we can affirm the judgment on the infringement? I think frankly – I mean our argument is that under the harmless heir statute, that's the penalty in effect, if you will, for it. So she was failure to lay out the record in a way that would enable it. So it's my view the court should be able to do that. Well, what are the facts you're referring to that we're lacking? There's no facts in the record, certainly facts on which the court appeals to rely on, about how the Juniper accused devices and networks operate. That's part of your point on the infringement side. Yes. You're not talking about facts pertaining to the claim. Well, that's an interesting debate because this court says there are no facts. This is what we say, and we know it's not true, but we say it. How does that affect the jurisdictional point of view? Well, I think that our argument is – You're not saying, are you, that we have to go back to the court of factual development to support the claimant's judgment. Or are you? Well, I think that that is part of the problem. I read the brief to say that. So maybe I just understood it. Yeah. The principal focus – I don't know how it fits with the jurisprudence. The principal focus is that what's really missing from this record are the facts to judge whether there's infringement or not, and also the facts to judge whether a particular claim instruction, even if it were changed, would implicate the infringement judgment, which is the only – But they've already conceived of this. They can't. There would be no infringement. Well, I mean, one example. One example of what – I think that's, as I said, that's something that I think is a big help for us. The only thing that I think is missing from that is if, for example, the court were to modify the construction of what we consider to be the three ATM terms in some way that doesn't go as far as Koshiba suggests, what's the implication of that sort of slightly modified claim construction? Is it – does that impact the ultimate judgment of non-infringement? I don't think we have any evidence in the record here that would enable this court to make that determination. So if the court makes any change to the ATM terms, let's say it would also agree on some of the other alternative terms, then what? So there's a significance with respect to changes made on the ATM terms. There's also the issue of what about the alternative grounds, such as other elements in the claims? Go back to your jurisdictional issue for a second. Yes. You say that if we were to find that the Third Circuit law that you indicate in regards to the issue of finality applies to the lack of jurisdiction, right? That's correct, Your Honor. What happens practically to this case now? You have a judgment of non-infringement, which leaves open all these other issues with regard to the defenses and claims, et cetera, right? They would essentially reappear in the case below. They would reappear, and now what happens to the case? I think the case goes back to the district court. Now, granted, the stipulation doesn't actually address explicitly the issue of what happens if there's a dismissal for lack of jurisdiction, but I think in the Verma case, the Third Circuit essentially said, well, we're going to allow proceedings to restart the district court. At that point, we would move for summary judgment of non-infringement, and we would set up the record. Based on the existing claim construction? Absolutely, Your Honor. And we would set up a factual record so we wouldn't need an argument about the significance of particular terms. We could set that record up. That's what we would do. On the ATM issue, I think it's worth noting a few points about that since that seems to be an issue on which there's been a lot of briefing at the very least. It's our view that there are basically three key issues of evidence here that demonstrate that what Chief Judge Robinson did here in terms of construing what we consider to be the three ATM terms, virtual connection, virtual path, and third-party network, is absolutely correct. One overriding thing that jumps out to me when you read these specifications is that this invention is a bypass pipe in an ATM network. It is described in virtually the entire specification in that environment. Now, counsels argue, well, the Internet is discussed and other networks are discussed. There's only one passing reference in the summary in the specification to the network other than ATM in which the bypass pipe could possibly be operated. Yeah, but on column three of the 710, they clearly refer to the ATM, the Green Relay, and the X25 as examples of virtual connection. Well, every other reference in that specification to a network other than ATM is talking about the outbound networks. This is an invention that's designed, we don't dispute expensive patent inventions, but it's designed to essentially connect up Internet networks. And it does that by digging a pipe into the ATM core. That was the description of the invention. So it's not surprising that, in fact, you would see other networks mentioned on the outbound sides. But, for example, if you look at figure 36, you see very clearly you have Ethernet, Ethernet, and then in the middle you've got bypass pipe. That's what this, with ATM networks described over the top of it, that's what this patent is directed to. So the fact that other networks are mentioned is not at all surprising. In fact, the title of the 322 patent is IP over ATM, which was, of course, a change that the examiner acquired in prosecution. And we think the prosecution history of the 322 patent is one of the particularly significant issues here because Toshiba argued to the patent office that our invention isn't limited to ATM. They've repeatedly made this argument in their briefs. However, that argument wasn't accepted by the examiner. In fact, the examiner specifically says, only certain of your arguments I deem persuasive. And it was not the ATM, sorry, it was not the my invention isn't limited to ATM, in terms of trying to get over this obviousness-type double-patent rejection. Rather, it was our invention is, the prior art doesn't show a cut-through path, which is another word for a bypass pipe. The examiner says, I consider that to be persuasive. Oh, and by the way, I'm also requiring you to amend the title of your patent to IP over ATM. I would also add that Chief Judge Robinson had before her testimony by a junior person, expert witness, who articulated that to him, a person of ordinary skill in the art, a person skilled in the art at the very least, when he read the specifications of these patents, they were only talking about virtual connection, virtual path, in terms of ATM. To him, that's what those terms implicated. So I think that given the collective evidence that she had, that was a perfectly appropriate decision for her to make. Whether one considers that evidence on which you have to defer or not, this court's precedence to say no, but still it's part of the overall package of evidence. There are also a number of other terms, for example, in the 710 patents, such as available to receive, identification information, claim elements in the 127 patent, that we think are very clearly or correctly construed by Judge Robinson below, simply consistent with their claim in ordinary meaning. It's simply the way the claims are written. And we can't, at this stage of the proceedings, change how they decided to claim their invention. In the logical network, they're objecting to her, the plain construction of the logical network, which appears in the 80 patent. There seems to be, they're advocating a broader construction and not a narrow construction. Yet in their brief, at page 35, the blue brief, they argue that the construction that she adopted was urged upon her by us for non-imprisonment purposes. So it is unclear why they, what the concern for Shiva has with that particular limitation. Well, I mean, it leads one to believe the only concern would be the validity of it. I mean, the potential challenge in the broad construction is her description. I think it's absolutely clear that there are a number of terms that are before this court that neither party is advocating has anything to do with infringement, it seems. I think logical networks is one, but there appears to be a disagreement. They seem to think that her construction means non-infringement, and we did not include that in our detailed stipulation of non-infringement. So you could look at Juniper's perspective as being one related to validity. So I think it's unclear, it seems to me, what the significance of that particular construction is to the ultimate judgment. Again, I think that's just another illustration of where this particular approach to sort of packaging these marking hearings up on appeal is a dangerous process, particularly in a case like this, where you've got 22 claims and four patents, where I don't agree at all that the issues are just one that's simple and discernible from the record. It is, as counsel suggested, quite complex, this case. And you've got patents that consume 50 columns of text. I mean, on the ATM argument, if you were to accept what Toshiba's suggesting, they're basically saying, look, let's just trim out of the specification 54 of the 55 columns, because all that is is reading the preferred environment to the claims. I submit that's not what this court's Phillips case was all about. I see that I'm out of time unless anyone has any other questions. All right. Thank you. Thank you very much. As a first point, the third circuit case was submitted by the counsel related to consent judgments, and there was no consent judgment here. It did not stipulate to this judgment, and in fact probably wasn't going to have the case remanded. With respect to the different technologies mentioned in the ATMs and patents, the ATM frame relay and X25 are not on the front side. They're connection-oriented networks that are usable with Toshiba's network. This procedure that was adopted in this case, then, was the idea of the court. I'm sorry? The procedure that we're arguing about here, arguing about this morning, whether it's a suit of age, whatever it is, was devised by the court. Right? You said you don't agree with it. I don't agree that any of the two were together. They're arguing against it. So it was the court that devised this procedure? That allowed the case to come up in this present context? No, the fact that it's a final judgment makes the case appealable. So why did you want to remand it? We did not want to have it remanded. They wanted to have it remanded. Well, why do you say this is not a final judgment? I mean, you're here because of this. It was a final judgment. We're saying it was a final judgment, and they did not stipulate to the judgment. They stipulated it as to form only. No, the stipulation, sir. The stipulation says the parties therefore agreed that the court may enter the final judgment. But this is not a stipulation to the entry of the final judgment. They stipulated it as to form only. They put that under their signature block. And that takes you to say that it was a third circuit law? I think that it doesn't even get there because the issue is whether we're on final judgment. And we are. It's been a final determination of non-infringement based on dispositive claims. And the dispositive ones beside ATM and upstream are what? There are two main dispositive issues, ATM and upstream. They have issues, not claims. So there's two paths.  It's a third circuit law. It's a third circuit law. It has to take care of all of those two issues. If all the claims terms would be reviewed, could we support a federal federal program? If all 12 claims terms were affirmed, yes, they would be affirmed. No. Well, what is it that you're saying? What you're saying to the seventh people are that if ATM and the seventh had upstream and 127 are here, then... But to be clear, I did make clear that those issues manifest themselves differently in different claim types. Well, that you did. Their ATM is explicitly read into three claim limitations. I know you did. But is it just those terms? There are no other terms. Regardless of where they appear, how they read into it. Yeah. Nine terms are affected by the ATM issue. One term is dispositive. It's impacted by the upstream issue. But that dispositive issue is not in place. Nine terms. Not in place. ATM is a term. ATM is a term that has been explicitly read into three of the claim limitations. Routed networks, virtual connection, and virtual payment. So where are the other two? We've got a total of 12. You say nine, one, where are the other two? There are two claim terms that we submit improperly, construed, and should be reviewed by this court. Routed device and stream information that are in the 127 patent. But we would submit that they are not dispositive of the upstream limitations with respect to that patent. It's dispositive. Mr. Rainey, we gave you extra time. If you need to respond to what you just said. I totally understand. My only response, Your Honor, is it appears he's backing away from any concession. That there can be alternative grounds of affirmance on the claims. I don't think that's at all clear in this record.